IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KAREN ANNETTE PATTERSON,           )
                                   )
        Plaintiff,                 )          NO. 3:20-cv-00989
                                   )
v.                                 )          JUDGE RICHARDSON
                                   )
STATE OF TENNESSEE DEPARTMENT      )
OF   LABOR   AND   WORKFORCE       )
DEVELOPMENT,                       )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION

Pending before the Court is "Defendant's Motion for Summary Judgment" (Doc. No. 22, "Motion"), supported by an accompanying Memorandum. (Doc. No. 23). Plaintiff filed a response (Doc. No. 29, "Response"), and Defendant filed a reply (Doc. No. 33, "Reply"). For the reasons stated herein, Defendant's Motion will be GRANTED.

## BACKGROUND[1]

In 2018, Plaintiff applied to Defendant Tennessee Department of Labor and Workforce Development for the position of Occupational Safety Specialist I, which is an entry-level position involving worksite inspections of Occupational Safety and Health Administration ("OSHA") violations. (Doc. No. 30 at ¶ 4). On October 19, 2018, David Buckles and Ashley Dugan, employees of Defendant, interviewed Plaintiff for the position. Plaintiff contends that during the interview Buckles made several comments that Plaintiff believed were based on her gender. For

---

[1] Unless otherwise noted, the facts and contentions referred to in this section are taken from Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 30). Facts that are stated herein without qualification are undisputed and treated as such. Alleged facts that are qualified here in some way (as for example by being prefaced with "Plaintiff contends that") are in dispute and are treated as such.

1

example, Plaintiff testified in her deposition that Buckles asked Plaintiff whether she would "get emotional" when being confronted or cussed out. (Doc. No. 32-2 at 6-9). She also testified that Buckles asked Plaintiff whether she was sure she would be able to withstand the elements and stated that even he had problems with handling the elements on the job. (Doc. No. 29 at 10 (citing Patterson Dep. at 46-47)).[2] She also testified that Buckles told Plaintiff the job could be dangerous and that he kept a gun in his truck because of frequent encounters with irate or angry employers/employees while he was on the job. (Doc. No. 32-2 at 6-9).

Plaintiff was not chosen for the position, and a male, Joseph Hegarty, was chosen instead. In a letter sent to Tennessee's Department of Human Resources, Burns Phillips, Commissioner of Defendant, indicated that Defendant chose to not hire Plaintiff for the position because "other candidates were better qualified for the position" and "[Plaintiff] has little or no experience in the safety field." (Doc. No. 1-8).

On November 17, 2020, Plaintiff brought this lawsuit against Defendant alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964. (Doc. No. 1). On May 17, 2021, the Court granted Defendant's motion to dismiss and dismissed Plaintiff's claims brought pursuant to the Age Discrimination in Employment Act, the Tennessee Human Rights Act, and the Tennessee Veterans Preference Act. In addition, the Court dismissed Plaintiff's claims for negligence against Defendants Buckles and Dugan, individually. (Doc. No. 18). Thus, Plaintiff's Title VII claims of age and gender discrimination are her only remaining claims. On February 1, 2022, Defendant filed the instant Motion, seeking summary judgment on those claims. (Doc. No. 22). The Motion is now ripe for adjudication.

---

[2] Plaintiff has not submitted the deposition page that she cites for this statement. Nevertheless, as the Court is ruling in Defendant's favor, the Court will consider this assertion that Plaintiff relies on and assume for purposes of summary judgment that Plaintiff did in fact testify that Buckles said this during the interview.

2

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). For this reason, courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

It is typically stated that the party bringing the summary judgment motion (the movant) has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *See, e.g. Johnson v. Ford Motor Co*., 13 F.4th 493, 502 (6th Cir. 2021) ("At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." (quoting *White v. Baxter Healthcare Corp*., 533 F.3d 381, 389–90 (6th Cir. 2008))); *Pittman v. Experian*

*Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). But this is somewhat inexact in the aftermath of 2010 amendments to Rule 56. The movant's initial burden actually is to demonstrate the absence of a genuine issue of material fact, and not necessarily to so demonstrate specifically by referencing portions of the record. True, prior to the 2010 amendments, referencing portions of the record seemed to be the only way to make such a demonstration, and even today that is the primary way to make such a demonstration.[3] But the 2010 amendments added, *inter alia* Rule 56(c)(1)(B), which "recognizes that a party need not always point to specific record materials." Rule 56 2010 Amendment Advisory Committee Note.

Under Rule 56(c)(1)(B), the movant actually has another available means—an alternative to *citing materials in the record*—for demonstrating the absence of a genuine issue of material fact. Specifically, the moving party may meet its initial burden (to indicate the absence of a genuine issue of material fact) by "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support [a material] fact" (for example, the existence of an element of a nonmovant plaintiff's claim). *See* Fed. R. Civ. P. 56(c)(1)(B).[4]

If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.

_____

[3] Under current Rule 56, a party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—still can (and typically does) attempt to support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. *See* Fed. R. Civ. P. 56(c)(1)(A).

[4] More specifically, Rule 56(c)(1)(B), as added in 2010, provides in pertinent part that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). This means, specifically in the case of a party asserting that a fact *cannot be* genuinely disputed (which typically would be the summary judgment *movant*), that its assertion can be supported by "show[ing]"—even without citing materials of record—that the adverse party (typically the *non-movant*) cannot produce admissible evidence to support the fact.

4

## ANALYSIS

Title VII's anti-discrimination provision makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "To survive a defendant's motion for summary judgment ruling on a Title VII claim [ ], a plaintiff may seek to raise a genuine issue of material fact by offering either direct evidence of discrimination or indirect (*i.e.*, circumstantial) evidence of discrimination in accordance with the familiar so-called *McDonnell Douglas* burden-shifting framework." *Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 864 (M.D. Tenn. 2021) (Richardson, J.) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Here, each party (through its omission of any discussion of direct evidence in its brief) appears to assume that Plaintiff does not present any direct evidence of gender discrimination. Apparently conceding that she lacks direct evidence, Plaintiff can prevail, if at all, only under the *McDonnell Douglas* burden-shifting framework applicable to indirect evidence. *Id.*

The undersigned previously has explained in detail the workings of the *McDonnell Douglas* burden-shifting test:

> The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden shifting framework as follows:
>
> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).
>
> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the

5

defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

Therefore, if only indirect (and no direct) evidence is present, the plaintiff bears the burden under *McDonnell Douglas* of first showing its *prima facie* case of race discrimination, *i.e.*, that:

1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 502 (6th Cir. 2007) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572–73 (6th Cir.2000)). If and when the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show some legitimate, non-discriminatory explanation for its action(s). *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

The Supreme Court has prudently cautioned, given the confusion sometimes discernible in this context, "[t]he nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). As the Sixth Circuit recently explained:

Establishing a prima facie case is not difficult, and it creates a "presumption that the employer unlawfully discriminated against the employee." *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 169 (6th Cir. 1996) (quoting [*Burdine*, 450 U.S. at 254]). This presumption does not shift the burden of proof, but only the burden of producing some evidence of permissible motive. *See Burdine*, 450 U.S. at 256 n.8, 101 S. Ct. 1089.

*Harris v. City of Akron, Ohio*, 836 F. App'x 415, 419 (6th Cir. 2020).

Thus, as to the existence of legitimate and non-discriminatory reasons for its actions, the defendant bears only the burden of production and not the burden of persuasion. *Garren v. CVS Rx Servs., Inc.*, 482 F. Supp. 3d 705, 717 (E.D. Tenn. 2020) (citing *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003)). To meet that burden of mere production, "the defendant need not persuade the court that it was actually motivated by the proffered reason[s]." *Burdine*, 450 U.S. at 254. Rather, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* To raise such

6

genuine issue, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection[, which] must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. "The defendant only has to present [evidence of] 'clear and reasonably specific' reasons that will 'frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.'" *Harris*, 836 F. App'x at 419 (quoting *Burdine*, 450 U.S. at 258).

If the defendant carries its burden to show a legitimate nondiscriminatory reason, then finally the burden shifts back to the plaintiff to show that the reason offered by the defendant is a pretext. *McDonnell Douglas*, 411 U.S. at 802-04 (1973); *Burdine*, 450 U.S. at 255. This resulting burden is one of persuasion, and this burden of persuasion (as to pretext) at this stage "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256. In other words, once the burden has shifted back to the plaintiff, the plaintiff must show by a preponderance of the evidence each of two components of pretext: that the defendant's reasons (i) were not its true reasons and (ii) were instead actually a pretext for discrimination. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). To defeat a summary judgment motion in such circumstances, the plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him. *Braithwaite v. Tinken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

*Jordan*, 539 F. Supp. 3d at 864-66 (footnotes omitted).

## I. It is Undisputed that Plaintiff Survives Step One, and that Defendant Survives Step Two, of *McDonnell Douglas*.

Here, Defendant concedes that Plaintiff has established a *prima facie* indirect-evidence case of gender discrimination. (Doc. No. 23 at 5). Thus, the Court may skip the first step of the *McDonnell Douglas* test. Plaintiff concedes that Defendant has proffered a legitimate, non-discriminatory reason (but obviously disputes the veracity of that reason) for its decision to not hire Plaintiff, (Doc. No. 29 at 4), which Defendant describes as the interviewers "not find[ing] [Plaintiff] to be a strong candidate for the position" and "[a] male, Joseph Hegarty, was hired due to his better qualifications" (Doc. No. 23 at 5). Thus, Plaintiff cannot defeat the Motion at step two of the *McDonnell Douglas* framework. That leaves the third and final step of *McDonnell Douglas*:

whether the stated reasons for Defendant's decision not to hire Plaintiff were a pretext for gender discrimination. As Plaintiff aptly states, "[t]his case is about pretext." (Doc. No. 29 at 3).

## II. Plaintiff Does Not Demonstrate that there is a Genuine Issue of Material Fact as to Pretext.

As the undersigned previously has explained:

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). "Whichever method the plaintiff employs, he always bears the burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003)).

"The three-part test need not be applied rigidly. Rather, '[p]retext is a commonsense inquiry: did the employer fire [or in this case, not hire] the employee for the stated reason or not?'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). "Ultimately the plaintiff must produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired [or failed to rehire] her.'" *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (quoting *Chen*, 580 F.3d at 400). The plaintiff "must meet this evidentiary burden by a preponderance of the evidence." *Id.* (citation omitted). If the plaintiff can do so, she meets her burden of showing that the employer's stated reason for the allegedly discriminatory reason was not its true reason.

But something more is required of the plaintiff. That is, the plaintiff must address the second component of pretext, *i.e.*, that the actual reason was discriminatory. That is, as indicated above, "[t]o demonstrate pretext, a plaintiff must show both that the employer's proffered reason was not the real reason for its action, and that the employer's real reason was unlawful." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993), and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)). In other words, if the burden has shifted back to the plaintiff, the plaintiff's trial burden would be to show by a preponderance of the evidence that the defendant's reasons were not its true reasons and were instead actually a pretext for retaliation. *Kirilenko-Ison*, 974 F.3d at 661. "To avoid summary judgment, then, the [plaintiff] must present evidence from which a reasonable jury could find that poor performance was not the real reason that [the defendant] terminated [the plaintiff], and that unlawful retaliation in fact was." *Ford Motor Co.*, 782 F.3d at 767. In some cases, the evidence that the defendant's proffered reason was not the

8

proffered reason will serve equally as evidence that the real reason was discriminatory, and vice versa. After all, evidence may suggest that the defendant's proffered (non-discriminatory) reason was not the real reason precisely because it suggests that the real reason was discriminatory; likewise, evidence may suggest that the defendant's proffered (non-discriminatory) reason was discriminatory precisely because it suggests that (suspiciously) the proffered reason was not the real reason. But under Sixth Circuit law, the Court must be mindful to require evidence of both kinds, even if it turns out to all be the same evidence.

It is worth summarizing in some detail how all of these (variously shifting and conditional) requirements apply in the *summary judgment context* in particular, once the above-referenced principles of summary judgment are applied to the unique framework of indirect-evidence cases under *McDonnell Douglas.* The Sixth Circuit spoke very helpfully on this topic:

> [When a] discrimination plaintiff bases his case on indirect evidence (i.e., evidence requiring inferences to reach the conclusion that the defendant discriminated against the plaintiff), we apply the burden-shifting framework first set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–05, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Rowan,* 360 F.3d at 547; *Town v. Mich. Bell Tel. Co.,* 455 Mich. 688, 568 N.W.2d 64, 67–68 (1997). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir.2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996) (applying the *McDonnell Douglas* framework to a disability-discrimination claim). The defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.* Although the burdens of production shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981).

*Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 179 (2009).

*Jordan*, 539 F. Supp. 3d at 866-68 (footnotes omitted) (emphasis added). Moreover, as the undersigned additionally has explained:

9

As for the third step [of *McDonnell Douglas*], it does not appear that the defendant-movant bears any initial burden. That is, the defendant-movant need not make an initial showing that the plaintiff cannot raise a genuine issue as to pretext. The rationale for this, presumably, is that the defendant—by showing evidence of an actual (legitimate and non-discriminatory) reason—in the second step already put the onus back on the plaintiff to raise a genuine issue that the reason was pretextual; thus, the defendant need not specifically attack any claim of pretext in order for the plaintiff to be obligated to present sufficient evidence of pretext. And in the context of summary judgment, sufficient evidence means evidence sufficient for a jury to find pretext by a preponderance of the evidence.

*Benitez v. Tyson Fresh Meats, Inc.,* No. 3:18-CV-00491, 2022 WL 58399, at *22 (M.D. Tenn. Jan. 5, 2022), *appeal dismissed*, No. 22-5086, 2022 WL 1308504 (6th Cir. Apr. 4, 2022) (footnotes omitted).

"All that a plaintiff must show in order to overcome a defendant's motion for summary judgment at this stage is that a reasonable juror could find that the defendant's reasons were pretextual." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 667 (6th Cir. 2020). "The plaintiff does not need to prove pretext; she only needs to show that the question of pretext is a genuine factual dispute." *Id.* (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011) (cautioning that "in the context of summary judgment ... the [*McDonnell Douglas*] burden-shifting analysis can obfuscate the appropriate question—whether there exists a genuine issue of material fact")). Thus, as described above, the questions for the Court are whether Plaintiff has demonstrated that a reasonable jury could find (1) that Defendant's asserted non-discriminatory reason for its decision to not hire Plaintiff has no basis in fact;[5] and (2) that the actual reason was discriminatory.

---

[5] As noted above in the quote from *Loyd*, 766 F.3d at 590, there are other ways to show that Defendant's proffered non-discriminatory reason was pretextual, but the "no basis in fact" path is the one that Plaintiff takes.

10

**A. Plaintiff has not demonstrated that a reasonable jury could find that Defendant's asserted non-discriminatory reasons for its decision to hire a male instead of Plaintiff has no basis in fact.**

As noted above, Defendant has proffered a pair of legitimate, non-discriminatory reasons for its decision not to hire Plaintiff, (Doc. No. 29 at 4), which Defendant describes as the interviewers "not find[ing] [Plaintiff] to be a strong candidate for the position" and "[a] male, Joseph Hegarty, [instead being] hired due to his better qualifications" (Doc. No. 23 at 5). Notably, the first of these reasons is related to the second reason, because to the extent that Plaintiff was not a strong candidate, it is more likely that Hegarty was the better-qualified candidate. But the two reasons are distinct because obviously the first reason focuses exclusively on Plaintiff, while the second focuses on a comparison between Plaintiff and Hegarty. And so the Court will address them separately, fully aware that the first reason is to a large extent encompassed within the second reason.[6]

In response, Plaintiff disputes that either of these reasons has a basis in fact.[7] So it is necessary to examine the factual underpinnings for Defendant's reasons. Although Defendant does

---

[6] Notably, though, unlike the second reason, the first reason encompasses concerns that go beyond having "qualifications," or being "qualified," as such; this is because there are things other than "qualifications" per se that affect how "strong" a candid is overall. For example, a candidate reasonably can be considered weaker if she fails to follow proper application procedures or dress appropriately (professionally) for an interview—thereby indicating undesirable characteristics like sloppiness or lack of adequate interest in the position—even if such failures do not reflect a lack of "qualifications," depending on how broadly one conceives of that term.

[7] Plaintiff also argues that she can show pretext because Defendant's asserted legitimate, non-discriminatory explanation for its decision to not hire her shifted over time. However, the additional reasons articulated by Defendant were in addition to its initially stated reason as to why it found Plaintiff to be the less qualified candidate (*i.e.*, her lack of safety experience). The Sixth Circuit has held that while an employer's shifting justification for its adverse employment action may aid in demonstrating pretext, "providing additional, non-discriminatory reasons that do not conflict with the one stated at the time of discharge does not constitute shifting justifications" that would aid Plaintiff in demonstrating pretext. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 891 (6th Cir. 2020) (citing *MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012) (collecting cases)). None of the additional stated reasons by Defendant conflict with its initially stated reason, and therefore there are no shifting justification(s) to aid Plaintiff is demonstrating pretext.

not describe the underpinnings in its brief, Defendant's Statement of Undisputed Facts (Doc. No. 24) offers some insight.

As for Plaintiff allegedly not being a strong candidate, Defendant contends in its Statement of Undisputed Facts that the interviewers asked Plaintiff "about what OSHA standards she was familiar with or learned about when getting her OSHA degree," and that "she was not able to give an answer about any OSHA standard." (*Id*. at ¶ 9). Defendant also contends that Plaintiff "did not have any safety work experience" and her "work history showed some significant gaps in time." (*Id*. at ¶¶ 10,13). Defendant also states that "Hegarty demonstrated more field experience and experience dealing with difficult people and difficult situations." (*Id*. at ¶ 15). Defendant also asserts that "Plaintiff's last paid employment was in 1996." (*Id*. at ¶ 26). Finally, Defendant asserts that Plaintiff failed to bring her resume and a list of three references to her interview. (*Id*. at ¶¶ 11-12).

As for Hegarty allegedly being the better-qualified candidate, some of the just-mentioned alleged facts suggesting Plaintiff's weakness as a candidate would (if true) naturally enhance the possibility that Plaintiff was weaker than any competing candidate, including Hegarty. And as to the relative strength of Hegarty in particular when compared to Plaintiff, Defendant states that "Hegarty demonstrated more field experience and experience dealing with difficult people and difficult situations." (*Id*. at ¶ 15).

Plaintiff does well poking holes in a few of Defendant's assertions of fact that underlie its two articulated reasons for not hiring Plaintiff. Plaintiff argues that she does have field experience despite Defendant's assertion otherwise, or that she is familiar with OSHA standards and discussed those standards during the interview. When viewing the evidence in Plaintiff's favor, she has created a genuine issue of fact at least as to whether she discussed OSHA standards in her

12

interview, whether she had any safety work experience, whether she had more field experience than Hegarty, and whether Defendant requested a resume and three recent references. (*See generally* Doc. No. 29).

But she is less successful in debunking other alleged facts purportedly providing a basis for Defendant's reasons, such as her lacking paid employment since 1996 and having significant temporal gaps on her resume. She fails to raise a genuine issue as to the existence of these facts. Although she does dispute how relevant these facts are *to the position for which she applied*, that is not the question here; the question is whether these facts serve to provide a basis for Defendant's asserted reasons for not hiring Plaintiff—*i.e.*, that Plaintiff was not a strong candidate and was less qualified than Hegarty. And the Court does not perceive any reason why these facts, which are not in genuine dispute, fail to provide a (factual) basis for Defendant's asserted reason that Plaintiff was not a strong candidate; to the contrary, they are the kind of facts that inherently reflect certain weaknesses in a job applicant's candidacy, and Plaintiff's candidacy is no different.

These facts similarly suggest deficits in Plaintiff's qualifications, namely, major temporal gaps in obtaining the kind of experience that naturally would be a vital qualification for a candidate. In doing, they necessarily add (factual) support to the notion that Plaintiff was a less-qualified candidate than Hegarty. But by itself, this does not mean that there is a factual basis for Defendant's assertion that Plaintiff was a less-qualified candidate than Hegarty; whatever Plaintiff's qualifications, they cannot be assessed as stronger or weaker than Hegarty's without an examination of Hegarty's qualifications. So theoretically, Plaintiff could have attacked the factual basis for the assertion that she was less qualified, by attacking Defendant's alleged facts regarding Hegarty's (supposedly superior) qualifications. But she simply does not do so.

13

As a result, she fails to demonstrate that a reasonable juror could find Defendant's actual asserted reason—that she is the lesser qualified candidate—has no basis in fact. As this Court explained above, at this stage of the *McDonnell Douglas* test, Defendant "need not make an initial showing that the plaintiff cannot raise a genuine issue as to pretext [and] [Defendant has] put the onus back on the plaintiff to raise a genuine issue that the reason was pretextual." *Benitez,* 2022 WL 58399, at *22. Thus, it is Plaintiff's burden to show that a reasonable jury could find that Defendant's assertion that she was the lesser qualified candidate was a pretextual, rather than genuine, reason for her application being rejected. As noted, her chosen path for doing so was to attempt to show that this assertion had no basis in fact. To successfully make this showing, Plaintiff would need to conduct some sort of comparative analysis of her qualifications to Hegarty's qualifications, the male that was hired for the position. Rather than doing that, as noted above Plaintiff merely disputes (successfully, in some cases) the existence of certain alleged facts that Defendant claims show she was not a strong candidate. But showing a dispute as to certain facts bearing only on the weakness (or strength) of Plaintiff's *own candidacy* does not suffice to show a dispute as to whether Plaintiff was the *lesser qualified of the two candidates*—especially when there are other, undisputed facts about Plaintiff's candidacy that impugn the strength of her candidacy. So just as she failed to show that a reasonable jury could find no basis in fact for Defendant's asserted reason that she was not a strong candidate, she has failed (to an even greater degree) to show that a reasonable jury could find no basis in fact that she was a less-qualified candidate than Hegarty.

Accordingly, having relied exclusively on the argument that Defendant's asserted non-discriminatory reasons for not hiring Plaintiff has no basis in fact. Plaintiff has not met her burden

to demonstrate that a reasonable jury could find that either (let alone both) of Defendant's asserted reasons were not the actual reasons.

**B. Plaintiff has not demonstrated that a reasonable jury could find that the real reason Defendant did not hire Plaintiff was discrimination.**

As noted above, Defendant is entitled to summary judgment on Plaintiff's claim because she has failed to show the first component of pretext: that a reasonable jury could find that Defendant's assertion that Plaintiff was the less-qualified candidate has no basis in fact. Plaintiff's claim alternatively fails because she fails to sufficiently demonstrate the second component of pretext: that a reasonable jury could find that the actual reason Defendant did not hire Plaintiff was discriminatory. *See Jordan*, 539 F. Supp. 3d at 868; *see also Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." (emphasis in original)).

Plaintiff asserts that discriminatory animus was the real reason for the decision to not hire Plaintiff. In support of this assertion, Plaintiff claims that "Buckles [ ] asked inappropriate, sexist questions of Plaintiff during her interview because she is female. He asked her whether she would 'get emotional' when being confronted or cussed out, and he asked this question because Plaintiff is female." (Doc. No. 29 at 9). Plaintiff also testified that Buckles also told Plaintiff that he kept a gun in his truck because of frequent encounters with irate or angry employers/employees while he was on the job. (*Id*.). Plaintiff testified that the context and tone of the comment was gender related because Buckles was acting "macho" and saying that he, as a man, felt it necessary to keep a firearm near him on the job. (*Id*.). Plaintiff contends that after Plaintiff told Buckles that she was an archeologist, he also made comments about whether she was able to work outside in the elements. (*Id*.). Plaintiff claims Buckles then told Plaintiff in a tone and manner that made it clear

15

his comments were gender-related that "even I" – meaning (according to Plaintiff) "even I as a man" – had problems handling the elements on the job. (*Id.*). Defendant does not appear to dispute that these comments were made. Even if Defendant did, at summary judgment the Court must view the evidence in Plaintiff's favor, and therefore, the Court finds that a reasonable jury could find that Buckles did make these comments during Plaintiff's interview.

Nevertheless, Defendant argues that even if the comments were made, the above-referenced evidence is "based largely on what Plaintiff says she felt and perceived during her interview" and "Plaintiff's alleged personal feelings or perceptions as to questions and comments that, for all she knows, were also posed to anyone else interviewed, do not constitute proof or evidence of discrimination based on gender." (Doc. No. 33 at 1). Defendant asserts that besides her own personal feelings, Plaintiff does not offer any other evidence that Defendant's decision to not hire her was based on gender discrimination. (Doc. No. 23 at 6).

The Court agrees with Defendant that the comments on which Plaintiff relies do not constitute evidence of gender discrimination, because the comments do not pertain to Plaintiff's gender. Numerous courts have held that the word "emotional" is not sex stereotyping indicative of gender discrimination. *See Arjangrad v. JPMorgan Chase Bank NA*, 2012 WL 1189750, at *23 (D. Or. Apr. 9, 2012) ("[Plaintiff] fails to present any authority recognizing [being emotional] as [a] commonly accepted female norm[ ]."); *Jackson v. St. Catherine Hospital, Inc*., 2016 WL 466508, at *5 (N.D. Ind. Feb. 8, 2016) ("Seemingly, it is [plaintiff's] belief that any comment about her emotional state was also a statement about her gender, as if only women can be characterized as emotional when they are loud and belligerent. Although that is her belief, there is no evidence that it was [her supervisor's]."); *Kob v. City. Of Marin*, 2009 WL 10680775, at *8 (N.D. Ca. Nov. 25, 2009) ("Plaintiff claims to have been called 'emotional,' 'irrational,' 'abrasive,'

16

'difficult,' 'confrontational,' and 'divisive.' Those adjectives are not particular to women and can just as easily describe a man."); *Blasdel v. Northwestern Univ.*, 687 F.3d 813, 819 (7th Cir. 2012) (affirming grant of summary judgment where official recalled plaintiff's "emotional need to be heard"). Here, Plaintiff produced no evidence that Buckles asked Plaintiff about being "emotional" because she was a woman, or, relatedly, that he used the term as an adjective particular to women, to the exclusion of men.

Buckles's comments about keeping a gun in his truck and Plaintiff's ability to work in the elements are likewise unhelpful to Plaintiff, because they simply do not pertain to Plaintiff's gender. Plaintiff's own reported subjective belief is that these comments reflect gender-based discrimination; however, as the Sixth Circuit has explained, where "only [a plaintiff's] subjective belief that the interviewers acted for discriminatory reasons could turn the alleged actions [ ] into a violation of Title VII," pretext will not be found, because "'[m]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. A court may not reject an employer's explanation of its action unless there is sufficient basis in the evidence for doing so.'" *Harris v. City of Akron, Ohio*, 836 F. App'x 415, 421 (6th Cir. 2020) (internal quotation marks and citation omitted).

Furthermore, comments that the Sixth Circuit has found to constitute evidence of discriminatory animus have been discriminatory remarks blatantly and facially implicating a protected characteristic, such as a supervisor noting that "34 years on the job were 'enough'" or suggesting that the plaintiff should retire, *Bartlett v. Gates*, 421 F. App'x 485, 490-91 (6th Cir. 2010); a statement that "no one wants to work with a Black man," *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 385 (6th Cir. 2008); referring to the plaintiff as "grandma" and "little old lady" on multiple occasions and making a "teasing reference to post-menopausal issues," *Hannon*

*v. Louisiana-Pacific Corp.*, 784 F. App'x 444, 450 (6th Cir. 2019), or frequent "comments regarding the capabilities of female officers," such as "the chief will never have a female on the command staff." *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 390 (6th Cir. 2009) (internal quotations omitted).

Facially, Buckles's cited comments simply do not rise to the level of these facially discriminatory remarks. So Plaintiff is relegated to relying on her subjective belief, based on her personal interpretation, that these comments were about Plaintiff's gender. And as discussed, "personal beliefs, conjecture and speculation" do not "constitute evidence of pretext." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) (citation omitted); *see also Creech v. Ohio Cas. Ins. Co.*, 944 F. Supp. 1347, 1358 (S.D. Ohio 1996) ("In order to support a claim of discrimination, the comments must reveal some discriminatory animus on the part of the speaker." (citing *Gagne v. Northwestern National Insurance Co.*, 881 F.2d 309, 314 (6th Cir. 1989))).

Accordingly, these comments do not count as evidence of pretext (in particular, evidence that Defendant's real reason for its actions was gender-based discriminatory animus).

Plaintiff additionally relies on the fact (set forth not in her brief, but in her Response to Defendant's Statement of Undisputed Facts) that Defendant employs 28 Occupational Safety Specialists, with seven (25%) being female and 21 (75%) being male. (Doc. No. 30 at ¶ 20). Defendant argues that this does not help Plaintiff to demonstrate evidence of discriminatory animus, because Plaintiff fails to present any evidence that equal numbers of females and males apply for this position. (Doc. No. 33 at 4). The Sixth Circuit has cautioned that "'courts must be careful to evaluate the proffered statistical analyses in light of the total circumstances present in a given case'" because "[i]ncomplete or inapplicable analyses, simplistic percentage comparisons,

18

and small sample sizes produce statistical analyses with little probative value.'" *Diebel v. L & H Resources, LLC*, 492 F. App'x 523, 532 (6th Cir. 2012) (quoting *Shollenbarger v. Planes Moving & Storage*, 297 F. App'x 483, 485 (6th Cir. 2008)). "Even greater caution is warranted when general statistics are used to show that age [or gender] caused the result in the case of one individual." *Diebel*, 492 F. App'x at 532 (citation omitted).

Although the statistics provided by Plaintiff may reflect a gender-based disparity in Defendant's relevant workforce, Plaintiff "has made no effort to eliminate any of the several other possible explanations for the disparity." *Diebel*, 492 F. App'x at 532. "Failure to control for random chance or employee abilities frequently undercuts statistical attempts to show pretext-and it does so here." *Id.* (citing *Conner v. State Farm Mut. Auto. Ins. Co.*, 273 F. App'x 438, 442–43 (6th Cir. 2008)); *Hilbert v. Ohio Dept. of Rehab. & Corr.*, 121 F. App'x 104, 110 (6th Cir. 2005); *see also Driggers v. City of Owensboro, Kentucky*, 110 F. App'x 499, 509 (6th Cir. 2004) (concluding that statistical evidence showing that "females make up only 4% to 4.5% of the City of Owensboro's Police Department whereas women comprise close to one-half of this country's workforce" was "not probative of sex discrimination . . . because it fails to compare the gender composition of the police force to the qualified population in the relevant labor market"). Additionally, as Defendant points out, Plaintiff failed to provide the Court with comparable statistics regarding the relevant applicant pool. *Ray v. Waste Mgmt. of Kentucky, LLC*, 2012 WL 2430469, *4–5 (W.D. Ky. June 26, 2012) (citing *Hall v. Martin Marietta Energy Systems, Inc*., 856 F. Supp. 1207, 1214 (W.D. Ky. June 1, 1994)); *see also Smith v. Leggett Wire Co*., 220 F.3d 752, 761–62 (6th Cir. 2000) (concluding that "statistics relating to the percentage of minority supervisors . . . were not admissible because he did not establish the number of qualified minorities

19

available in each labor market"). Therefore, these statistics are not useful in supporting Plaintiff's gender discrimination claim.

Plaintiff has asserted no other argument or evidence that could lead the Court to find that the real reason for Defendant's decision not to hire Plaintiff was gender-based (or, for that matter, any other) discriminatory animus. Therefore, Plaintiff has failed to produce sufficient evidence of pretext to create a triable issue in this case. Accordingly, the Court will grant summary judgment to Defendant on her claim of gender-based discrimination in violation of Title VII

**III. Plaintiff's Age Discrimination Claim brought pursuant to Title VII.**

In Plaintiff's Complaint, she also alleges that Defendant violated Title VII by discriminating against her based on her age. (Doc. No. 1 at 16). In Defendant's Motion, it asserts that "[w]hile Plaintiff purports to include an age discrimination claim in her Title VII charge within her Complaint, courts have explicitly held that Title VII does not cover age discrimination claims." (Doc. No. 23 at 2 n.1 (citing *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 n. 4 (1982) (noting that Title VII does not cover age discrimination claims)). In Plaintiff's Response, she does not address her apparent Title VII age discrimination claim. She has accordingly abandoned this claim, to the extent it is even a viable claim—which, the Court additionally finds, it is not. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x. 484, 487 (6th Cir. 2011)); *see also Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524 (6th Cir. 2006) ("Courts have explicitly held that Title VII does not cover age or disability discrimination claims."). Therefore, Defendant is also granted summary judgment on Plaintiff's age discrimination claim brought pursuant to Title VII.

20

CONCLUSION

For the above-stated reasons, Defendant's Motion for Summary Judgment will be GRANTED, and judgment will be entered in Defendant's favor on Plaintiff's claims of gender discrimination and age discrimination brought pursuant to Title VII.

An appropriate order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE